UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 18-4-DLB

FREDA BLACKBURN                                                                          PLAINTIFF

vs.                         **MEMORANDUM OPINION & ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,                                                          DEFENDANT

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

Plaintiff Freda Blackburn brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

On January 6, 2015, Plaintiff Freda Blackburn applied for disability insurance benefits (DIB), alleging disability beginning October 3, 2014.[1] (Tr. 151). Plaintiff was fifty-one years old at the time of filing, and she alleged that she was unable to work due to chronic back pain, history of breast cancer, asthma, bilateral foot pain, joint pain, carpal tunnel syndrome, and obesity. (Doc. # 9 at 2). Plaintiff's application was denied initially on March 30, 2015, and again on reconsideration on May 7, 2015. (Tr. 94 and 99).

---

[1]     Plaintiff also asserted a period of disability claim. *See* (Tr. 20).

At Plaintiff's request, an administrative hearing was conducted on September 14, 2016, before Administrative Law Judge ("ALJ") Roger L. Reynolds. (Tr. 41-68). On January 19, 2017, ALJ Reynolds ruled that Plaintiff was not entitled to benefits. (Tr. 20-34). This decision became the final decision of the Commissioner on November 8, 2017, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

Plaintiff filed the instant action on January 5, 2018, alleging the ALJ's decision was "not supported by substantial evidence," and was "contrary to law and regulation." (Doc. # 1 at 2). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 9 and 14).

## II. DISCUSSION

### A. Overview of the Process

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant can still perform substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe;" Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. The burden of proof rests with the Plaintiff on the first four steps. As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards.

See *Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Pursuant to this standard, courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 289-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

**B. The ALJ's Determination**

As an initial matter, the ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019. (Tr. 22). The ALJ then proceeded to the five-step sequential evaluation process to determine whether Plaintiff is disabled. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 3, 2014, the alleged onset date of disability. *Id.* at 23. At Step Two, the ALJ determined that Plaintiff has the following severe impairments: (1) obesity; (2) breast cancer status post lumpectomy, chemotherapy, and radiation treatment; (3) degenerative disc disease of the lumbar spine with multilevel disc bulges, anterolisthesis of L4 on L5, and facet arthropathy at L4-5 and L5-S1; (4)

3

hypertension; (5) asthma; (6) mild metatarsus adductus deformation of the feet with plantar fasciitis; (7) right hand carpal tunnel syndrome; and (8) degenerative joint disease of the bilateral shoulders. *Id.* At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

At Step Four, the ALJ found that Plaintiff possesses the residual functional capacity ("RFC") to perform work at the light exertional level, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [T]he claimant can lift and carry twenty pounds occasionally, and ten pounds frequently. She can stand/walk for six hours, and sit for six hours, out of an eight-hour workday with a sit/stand option requiring no prolonged standing or walking in excess of thirty minutes without interruption, and no sitting in excess of two hours without interruption. She frequently can use her right dominant hand for handling, fingering, or grasping. She cannot climb ropes, ladders, or scaffolds. She occasionally can climb stairs or ramps, balance, stoop, kneel, crouch, or crawl. She should not engage in aerobic activities such as running or jumping. She should not work with her hands over her head, or operate foot pedal controls. She should not be exposed to concentrated dust, gases, smoke, or fumes. She should not be exposed to temperature extremes, excess humidity, concentrated vibration or industrial hazards.

(Tr. 25). Based upon this RFC and relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was unable to perform her past relevant work as a machine operator and fast-food worker. *Id.* at 31. Therefore, the ALJ proceeded to Step Five, where he determined that there were other jobs that exist in significant numbers in the national economy that the Plaintiff could perform. *Id.* at 32. Specifically, the ALJ determined that the Plaintiff could perform occupations such as ticket taker (1,100 jobs in Kentucky and 128,000 nationally) or grading and sorting work (1,300 jobs in Kentucky and 87,000 nationally). *Id.* Accordingly, the ALJ concluded that Plaintiff was not under a

4

disability, as defined in the Social Security Act. *Id.* at 33.

### C. Analysis

The Plaintiff advances four arguments in her Motion for Summary Judgment. (Doc. # 9). First, Plaintiff argues that the ALJ erred when he found the record contained no opinions from treating physicians to support the claimant's disability, because Plaintiff's treating physician, Dr. Troutt, stated that the Plaintiff is disabled and unable to work. (Doc. # 9 at 5). Second, Plaintiff argues that the ALJ did not apply the proper weight to the opinion of Dr Saranga, a state-agency medical consultant. *Id.* at 6. Third, Plaintiff asserts that the ALJ did not comply with his duty to fully develop the record because he did not "re-contact" Dr. Troutt for additional information upon a finding that "[w]ork restrictions evidently were imposed although a copy of such restrictions was not found in the medical record." *Id.* at 7. Finally, Plaintiff argues that the that the ALJ did not comply with his duty to fully develop the record because he failed to order a consultative examination or consult a medical expert. The Court will address each argument in turn.

#### 1. *The ALJ properly considered the opinion of Dr. Troutt.*

Plaintiff first asserts that the ALJ effectively ignored the opinion of Dr. Troutt, Plaintiff's treating pain specialist, that Ms. Blackburn is disabled and unable to work. (Doc. # 9 at 5-6). Plaintiff argues that "the ALJ was required to give at least some consideration to the statement from Dr. Troutt that Ms. Blackburn is unable to work and provide an explanation as to why it was rejected . . . . His failure to do so constitutes reversible error." *Id.* at 6. An examination of the ALJ's decision and the relevant legal standards disproves Plaintiff's claim that she is entitled to relief on this basis.

5

Plaintiff's assertion that the ALJ failed "to give at least some consideration" to Dr. Troutt's opinion mischaracterizes the record. (Doc. # 9 at 6). The ALJ's opinion notes that Dr. Troutt placed Plaintiff on a ten-pound lifting restriction in 2014, and—as no jobs with such a lifting restriction were available through her employer at the time—advised her to find other work. (Tr. 26, 28). The ALJ's opinion further noted that in 2015, Dr. Troutt "opined the claimant was unable to work due to her medical condition, and he referred her to an orthopedic surgeon." *Id.* at 28. Acknowledging Dr. Troutt's opinions, the ALJ nonetheless found that "the medical evidence of record does not appear to include a copy of any specific restrictions issued by Dr. Troutt." *Id.* at 31. Moreover, the ALJ found that, even accepting Dr. Troutt's opinion that Plaintiff was unable to work at her prior position as a machine operator, Dr. Troutt "stopped short of indicating that he opined she could not work any job, but only that she could not continue working in a job with physical requirements substantially greater than those set out in the current residual functional capacity." *Id.*

Even if Dr. Troutt had opined that the Plaintiff was completely unable to work, the ALJ was not required to give controlling weight to Dr. Troutt's opinion because it constituted an ultimate conclusion, not a medical opinion. It is well-settled that an administrative law judge, in assessing medical evidence in a disability case, is required to give greater weight to the opinions of a treating physician than to those of non-treating physicians. *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 474 (6th Cir. 2012) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). This "treating physician rule," however, only applies to *medical* opinions. While a medical expert may opine "on issues such as whether [claimant's] impairment(s) meets or equals the

requirements of any impairment(s) in the Listing of Impairments," as well as claimant's RFC or the application of vocational factors, such opinions are not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues is reserved to the Commissioner"). The Sixth Circuit has held that a treating physician's conclusion that a claimant is "unable to work"—the precise statement at issue here—does not constitute a "medical opinion" under agency regulations. *See Dunlap*, 509 F. App'x at 474-76. *See also Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 246 n.1 (6th Cir. 2015) (finding that a doctor's note that "d[id] not reflect a judgment about the nature and severity of the claimant's impairments" did not fall within the scope of a "medical opinion."). Accordingly, Dr. Troutt's conclusion that Plaintiff was "unable to work" due to a "medical condition" therefore did not constitute a "medical opinion," and Dr. Troutt's opinion was not awarded controlling weight. The ALJ properly considered Dr. Troutt's opinion and provided a reasonable explanation for his treatment of the opinion.[2]

The ALJ concluded, based upon the totality of the evidence, including the relevant treatment records, medical opinions, and the testimony of a vocational expert, that an individual with Plaintiff's RFC could successfully adjust to other work in the national economy. (Tr. 25-33). The substantial evidence relied upon by the ALJ in reaching this conclusion included records of x-ray films and MRIs that generally reflected no more than mild abnormalities (Tr. 27-30; *see* Tr. 343, 395-97, 399-400, 890, 903); the physical examination findings of two orthopedic surgeons, both of whom found Plaintiff to have

---

[2] Plaintiff's argument that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted" fails for the same reason, as the regulation upon which Plaintiff relies applies only to "medical opinions." *See* (Doc. # 9 at 6) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

7

intact range of motion in her spine, a negative straight-leg-raising test, and normal strength and sensation (Tr. 29-30; *see* Tr. 899-900, 902-03); the opinion of a state agency physician, Dr. Saranga, indicating that Plaintiff retained abilities consistent with a range of light work (Tr. 31; *see* Tr. 88-90); and a finding, unchallenged on appeal, that Plaintiff's symptom testimony was not entirely consistent with the medical and other evidence in the record (Tr. 30; *see* Tr. 51-52, 55, 58-60). Accordingly, Plaintiff's first argument is meritless.

        2.      *The ALJ properly considered the opinion of Dr. Saranga.*

Plaintiff next asserts that the ALJ did not apply the proper weight to the opinion of Dr. Saranga, a state-agency medical consultant, because a number of additional medical records were added to the record subsequent to Dr. Saranga's review. (Doc. # 9 at 6-7). Specifically, the medical records contained evidence of Plaintiff's treatment for breast cancer; treatment by a podiatrist for bilateral foot pain; an abnormal EMG/NCV study documenting an S1 radiculopathy; and evaluation by Plaintiff's orthopedic specialist recommending a surgical spinal fusion. *Id.* at 7. Plaintiff concludes that because the ALJ's finding gave significant weight to Dr. Saranga's opinion, it "cannot possibly be based on substantial evidence." *Id.*

First, the ALJ's decision to accord greater weight to state-agency physicians over Plaintiff's treating source, Dr. Troutt, was not reversible error. "In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). Where, as here, Plaintiff's treating source did not provide a medical opinion, the ALJ was not required to apply the treating physician rule. *See*

8

discussion, *supra*.

Reliance upon the opinion of Dr. Saranga was also reasonable. As it represented the only *medical* opinion on the record, the ALJ gave significant weight to Dr. Saranga's opinion on the grounds that "the record includes little other diagnosis or opinion of the claimant's ability to perform work-related activities." (Tr. 31). *See also Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 294 (6th Cir. 2006) (finding that the opinions of the state agency medical consultants provided substantial evidence for the ALJ's RFC assessment, particularly in the absence of relevant data from treating physicians). Moreover, it strains credibility for Plaintiff to attack Dr. Saranga's May 7, 2015 conclusion on one hand, and then on the other hand seek to rely on the opinion of Dr. Troutt, who stopped seeing Plaintiff in February 2015, shortly after she left her position at Nestle. *See* (Tr. 51, 61, 91, and 283). Plaintiff cannot explain how there was purportedly sufficient evidence for Dr. Troutt to make a determination that Plaintiff was disabled and unable to work in February 2015, but that there was somehow not enough evidence for Dr. Saranga months later.

Nor has Plaintiff supplied any significant, specific examples of discordance between the opinion of Dr. Saranga and the subsequent records she cites. For example, Plaintiff argues that the subsequent medical records "contained significant evidence including Ms. Blackburn's bout with breast cancer." (Doc. # 9 at 7). However, as the ALJ noted, Plaintiff completed chemotherapy in December 2015, "with a treatment response that her oncologist described as 'excellent,'" and following a lumpectomy surgery in January 2016 pathology results "showed no residual tumor." (Tr. 29). At the administrative hearing, Plaintiff reported that as of July 2016 "there was no sign of breast

9

cancer." (Tr. 51). Based upon his review of the record, the ALJ concluded that "[t]he early stage right breast cancer, which was diagnosed in mid-2015, appears to have been eradicated by treatment which included chemotherapy, a lumpectomy, and radiation treatment. The evidence indicates the claimant has retained full range of motion of her right upper extremity even with such treatment." (Tr. 31). Plaintiff has simply failed to demonstrate how the subsequent records should alter the ALJ's analysis.

Rather, the opinion demonstrates that the ALJ properly considered the subsequent records. "In the event that a non-examining source did not review a complete case record," all that the Sixth Circuit requires of the ALJ is "some indication that the ALJ at least considered these facts before giving greater weight to an opinion from the non-examining source than to the opinion of a treating or examining source." *Hastings v. Colvin*, 16-CV-1083, 2018 WL 1525697, at *7 (W.D. Tenn. Mar. 28, 2018) (citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). Here, the ALJ considered the new evidence before giving weight to Dr. Saranga's opinion, and expressly tempered his deference to Dr. Saranga's opinion based upon the new evidence presented. Specifically, the ALJ's opinion states that "based on evidence received at the hearing level, the undersigned finds the claimant is somewhat more limited than was found by the consultant." (Tr. 31). The ALJ assessed a more restrictive RFC than suggested by Dr. Saranga based upon the evidence received after Saranga's review. (*Compare* Tr. 25, *with* Tr. 88-90). Accordingly, the Court finds that the ALJ met all procedural and evidentiary requirements when assigning a weight to Dr. Saranga's opinion.

Further, by merely pointing to general medical evidence in the record, Plaintiff in essence is just requesting that the Court re-weigh the evidence. This is improper. It does not matter if substantial evidence does support Plaintiff's disability, so long as substantial evidence also supports a finding of "not disabled." *Her*, 203 F.3d at 389-90 (holding that "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the decision reached") (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also Listenbee*, 846 F.2d at 349. As a result, it does not matter if Plaintiff, or even this Court, believes substantial evidence supports a different disability determination. All that is required of the ALJ is that he render a decision that is supported by substantial evidence. The ALJ has done so here. Accordingly, Plaintiff's second argument is meritless.

### 3. The ALJ did not abuse his discretion in choosing not to recontact Plaintiff's treating physician.

Third, Plaintiff asserts that the ALJ did not comply with his duty to fully develop the record because he did not "re-contact" Dr. Troutt for additional information upon a finding that "[w]ork restrictions evidently were imposed although a copy of such restrictions was not found in the medical record." (Doc. # 9 at 7) (citing Tr. 28). Plaintiff asserts that, as she testified at the administrative hearing, Dr. Troutt restricted her to lifting/carrying no more than ten pounds. (Tr. 60-61). Plaintiff argues that "an ALJ must recontact a treating physician when the evidence does not support the treating source's opinion and the adjudicator cannot ascertain the basis of the opinion from the record." (Doc. # 9 at 8) (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269 (6th Cir. 2010) (finding that the ALJ did not abuse his discretion in choosing not to recontact the claimant's treating physician)).

11

"The burden lies with the claimant to prove that she is disabled." *Ferguson*, 628 F.3d at 275 (citing *Foster v. Halter*, 279 F.3 348, 353 (6th Cir. 2001)). "For treating sources, the rules also require that the ALJ "make[s] every reasonable effort to recontact" medical sources "for clarification when they provide opinions on issues reserved to the Commissioner and the basis for such opinions are not clear." *Ferguson*, 628 F.3d at 273. Two conditions must both be met to trigger the duty to recontact: "the evidence does not support a treating source's opinion . . . and the adjudicator cannot ascertain the basis of the opinion from the record." *Id.* An ALJ is required to re-contact a treating physician "only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n.3 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). Ultimately, "[t]he ALJ has discretion to determine whether additional evidence is necessary." *Ferguson*, 628 F.3d at 275 (citing *Foster v. Halter*, 279 F.3 348, 353 (6th Cir. 2001)).

Here, as in *Poe*, 342 F. App'x at 156 n.3, the ALJ merely rejected in part the limitations recommended by Dr. Troutt; while Dr. Troutt appears to have recommended a ten-pound lift restriction, the ALJ determined that Plaintiff "can lift and carry twenty pounds occasionally, and ten pounds frequently." (Tr. 25, 31). The information received was not inadequate to reach a determination on Plaintiff's disability status—evidenced by Plaintiff's own conduct. Plaintiff's counsel did not challenge the adequacy of the record on this point at the administrative hearing, despite being provided the opportunity to do so. (Tr. 61, 65-66). The ALJ should "ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case" in a manner that adequately explores the

Plaintiff's claims, and "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 382 F.3d 1268, 1271 (10th Cir. 2004).

At Step Four of the analysis, the ALJ methodically examined the entirety of the record and found that Plaintiff was capable of doing light work with the additional limitations specified. (Tr. 25). While the ALJ weighed the evidence contrary to how the Plaintiff preferred, the ALJ did not fail to analyze the evidence set forth in the record— which contained hundreds of pages of medical records. Accordingly, the ALJ did not abuse his discretion in determining that additional evidence was unnecessary, and Plaintiff's third argument is meritless.

>    4.  *The ALJ did not abuse his discretion in choosing not to order a consultative examination or consult a medical expert.*

Finally, Plaintiff argues that the ALJ had a duty to order a consultative examination or to obtain testimony from a medical advisor to support the RFC assessment because the record was otherwise incomplete. (Doc. # 9 at 8-9) (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008) (magistrate judge opinion)). In support of her argument that the ALJ's decision was not based upon substantial evidence, Plaintiff asserts that the non-examining medical source upon whom the ALJ relied "had very limited records for review, and could not possibly offer a fair and reliable opinion as to Ms. Blackburn's RFC." (Doc. # 9 at 9).

"Unquestionably, the claimant bears the burden of proof as to the existence and severity of the limitations caused by her impairments" and "[a] functional capacity opinion from a medical source may not be necessary in every case." *Deskin*, 605 F. Supp. 2d at 911 (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007)). Again,

Plaintiff cannot explain how there was purportedly sufficient evidence for Dr. Troutt to make a determination that Plaintiff was disabled and unable to work in February 2015, but that there was somehow not enough evidence for Dr. Saranga months later.

There was a sufficient record to allow the ALJ to reach his conclusion. The evidence in this case included approximately 700 pages of medical records. (Tr. 232-902). Because the ALJ had a sufficient record upon which to make a decision, he had no obligation to order a consultative examination or consult a medical expert. *See* 20 C.F.R. 404.1519a(b) ("We *may* purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.") (emphasis added); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."). Plaintiff did not raise the issue of the completeness of the record with the ALJ, nor did she request the ALJ to order a consultative examination or consult a medical expert, further supporting that the record was adequate. *See Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) (rejecting argument that the ALJ should have ordered additional testing where the plaintiff's counsel did not request additional testing at the administrative hearing and the extensive administrative record already documented the plaintiff's conditions). Accordingly, because the ALJ had an adequate record on which to make a decision, and because he supported that decision with substantial evidence, Plaintiff's arguments must fail.

## III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 9) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 14) is hereby **GRANTED**; and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 9th day of October, 2018.

Signed By:
*David L. Bunning* DB
United States District Judge

L:\DATA\SocialSecurity\MOOs\Lexington\18-4 Blackburn MOO.docx